Dear Mr. Stockstill:
In Opinion No. 02-0169, it was the legal opinion of this office that the retirement benefits of firefighters held under the Deferred Retirement Option Plan ("DROP") in accordance with R.S. 11:2257(F)(2), "shall earn interest at a rate equal to the percentage rate of return of the system's investment portfolio [less certain costs] " but that the Firefighters' Retirement System (FRS) did not have to pay interest that it did not earn during the year. However, in light of the fact that the system's investment portfolio suffered losses in the past two years, the opinion went on to interpret the second sentence of La. Const. (1974) art. 10, § 29(E)(5), as preventing the system from passing those losses onto these accrued benefits, which cannot constitutionally be diminished or impaired.
In response to that opinion, you now ask our office whether the FRS can segregate these funds and ask the employees, on an individual basis, to sign a directive ordering either that these funds be invested in United States securities, a safe but sometimes low-return investment, or that they be invested in the FRS investment portfolio, with a waiver of their constitutional right to avoid any diminution or impairment of these funds, so that they can have the benefit of a higher yield in most years if they are willing to suffer diminution in those rare years where investment losses are incurred.
It is our opinion that, under the statutes as presently exist, the FRS cannot implement such a proposal.
To begin with, such a proposal, if implemented, could be fraught with legal questions and become a source of continuing and costly litigation and uncertainty as to burdens of proof and evidence in individual cases. While it is true that a person may waive his personal constitutional rights, such waivers must be intelligent, knowing, and voluntary (that is, intentional) in order to be effective with full consent. For an idea of what litigation can be spawned in this area, even as to merely statutory rights, see, for example, Aetna Finance Co. v. Antoine,343 So.2d 1195 (La.App. 4th Cir. 1977). In this case, the Antoines had granted a chattel mortgage on some household movables which were statutorily exempt from seizure and sale. The exempt items of property were actually listed in the chattel mortgage, and the court said that the execution of the chattel mortgage purports to act as a waiver of the statutory exemption from seizure and sale of these items. Even so, however, the court reviewed what constitutes a waiver under the law and held that a debtor who has executed a chattel mortgage may subsequently, absent allegations of fraud, assert the defense that the waiver was not voluntarily, knowingly and intelligently made. "Notwithstanding the fact that a person executing a chattel mortgage knew, presumably, that he was in fact granting a chattel mortgage on the movable property, he is not presumed to know the effect of a chattel mortgage on the exemption," id.,343 So.2d at 1198. Consequently, this requirement that a waiver must be "intelligently, knowingly, and voluntarily" made, could create an evidentiary burden for the FRS in every case, especially where individual firefighters lack investment sophistication and experience and fail to appreciate the full effects of the papers they are asked to sign.
Even worse, the courts could interpret La. Const. (1974) art. 10, § 29(E), as not being subject to waiver by an individual retiree. That whole provision, which deals with "Actuarial Soundness," does not purport to grant individual rights to persons, for example, as the Fifth
and Sixth Amendments to the United States Constitution do or as La. Const. (1974) art. 1 does. Rather, it appears to contain mandatory directives from the people of the state (as the true authors of the constitution through their referendum vote) to the affected retirement systems as their agents regulating the manner in which these systems maintain, invest, pay out, and generally act with regard to retirement funds. No one individual retiree may possess the power to authorize a change in these provisions of mandate required by the people, acting as the state body politic, the principal, to these retirement systems who act as their agents.
The FRS might also have to make certain the new self-direction of investments does not constitute "constructive receipt" of the benefits that are supposed to be deferred to the DROP program. The retired firefighters are not supposed to have received these funds, but a question of "constructive receipt" must be considered when they are given the absolute power of directing the investment of these funds. It is not our understanding that there is necessarily a "constructive receipt" in these instances, but we caution that the proposal raises questions about the balance between power over the funds and restrictions on that power.
We think that the Louisiana Legislature has resolved these and other legal questions raised by such a proposal as you describe, when it enacted R.S. 11:2257(F)(2) to say that these funds "shall earn interest at a rate equal to the percentage rate of return of the system's investment portfolio [less certain costs]. " The use of the word shall
in the Louisiana Revised Statutes of 1950 generally means the mandatory, not the discretionary. R.S. 1:3. In our opinion, the DROP benefits of the firefighters earn interest at the same rate as the FRS investment portfolio, but, as stated in Opinion No. 02-0169, they do not earn interest when the system's investment portfolio loses money or fails to gain a yield above allowable costs according to the statute. And, according to the interpretation given to La. Const. (1974) art. 10, § 29(E)(5) by Opinion No. 02-0169, they cannot be diminished or impaired, even when the system's investment portfolio loses money.
We should note that even if the Louisiana Legislature in the future would amend the statutes to provide authority for implementing such a proposal, statutory amendments have no effect on constitutional provisions. La. Const. (1974) art. 10, § 29(E), would still remain in full force and effect, and any waiver of any provision thereof, if legally allowed at all, would still be subject to the requirement that it be intelligent, knowing, and voluntary.
Trusting this opinion has adequately answered your request, we remain
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: _________________________________ THOMAS S. HALLIGAN Assistant Attorney General
DATE RELEASED: February 28, 2003